# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| **CHRISTOPHER DETTLE and KIM DETTLE,** <br><br> Plaintiffs, <br><br> vs. <br><br> **RICHFIELD CITY, RICHFIELD CITY POLICE DEPARTMENT, JARRED LEFEVRE, SHANE SCOTT, SCOTT HATCH, and LARRY ASHURST,** <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:13CV357DAK <br><br> Judge Dale A. Kimball |

This matter is before the court on Plaintiffs Christopher and Kim Dettle's Motion for Partial Summary Judgment, and Defendants' Motion for Summary Judgment. The Defendants include Richfield City, Richfield City Police Department, Jarred LeFevre, Shane Scott, Scott Hatch, and Larry Ashurst. On July 30, 2014, the court held a hearing on the motions. At the hearing, Plaintiffs were represented by Justin D. Heideman and Defendants were represented by David L. Church. The court took the motions under advisement. The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties. The court has further considered the law and facts relevant to the parties' motions. Now being fully advised, the court enters the following Memorandum Decision and Order.

## BACKGROUND

On December 18, 2012, Richfield City police officers were dispatched to 238 East 700

North in Richfield, Utah. The officers were told that a man at that address was locked in his bedroom because his wife was threatening to harm him with a knife and had access to a firearm. The officers were also told that the man could not get himself out of the house and that he wanted the police to enter his home by breaking through the garage door and the door from the garage into the house.

The officers erroneously arrived at 258 East instead of 238 East. Officer Jared LeFevre was the first officer to arrive. He fully admits that he made the mistake regarding the wrong address. He does not know how he made the mistake–whether he read the address wrong, transposed the numbers, or failed to look at the address. In any event, he believed he was at the right address. The other officers, according to their office's custom, relied on the first officer on the scene to verify the correct address.

The officers proceeded to kick in the garage door and the door leading into the house. Plaintiffs Christopher and Kim Dettle were the residents of the home. They were watching television in bed and heard a disturbance. Christopher Dettle left the bedroom to investigate the disturbance. When he was walking down the hallway adjacent to the room, the officers broke through the door and confronted him with guns raised. The officers ordered him to the floor. Kim Dettle had begun to follow Christopher Dettle out of the bedroom and had just entered the hallway when the officers ordered Christopher to the floor. The officers aimed their weapons at Kim Dettle and ordered her to the ground. Both Dettles complied.

Once the Dettles were on the floor, the officers demanded information regarding Mrs. Davis. The Dettles responded that Mrs. Davis lived next door. Sergeant Shane Scott then exclaimed, "Shit, we're at the wrong house." The officers immediately holstered their weapons. The officers did not doubt what the Dettles told them. Sergeant Scott instructed Officer LeFevre

to remain with the Dettles and explain the situation while the others proceeded to emergency at the Davis residence at 238 East.

The officers were in the Dettles' home for just over one minute, a total of 76 seconds from the moment the officers entered the house to the moment they exited the house. Officer LeFevre stayed an additional two to three minutes at the Dettles' home to apologize and explain the situation. He then went to help at the Davis home and returned later to the Dettles' home. Officer LeFevre and Sergeant Scott returned to the Dettles' home to offer assistance. Christopher Dettle had cut his hand when the officers ordered him to the ground. Officer LeFevre took the Dettles to the hospital, where Christopher Dettle's received stitches for the cut on his hand.

After the incident on December 18, 2014, Police Chief John Evans took the lead in interacting with the Dettles. The Dettles do not think that Police Chief Evans addressed the damages in a timely manner. Defendants paid to have the Dettles carpets cleaned. However, after waiting 38 days for Defendants to fix their damaged doors, the Dettles repaired the doors themselves.

The weapons the officers used were equipped with red laser sights that project a red dot where the weapon is being aimed. Kim Dettle was so traumatized by the intrusion that she had to remove all of the red Christmas lights from her Christmas decorations because the red light reminded her too much of the laser sights on the officers' weapons.

Richfield City Police Department has no written policy regarding address verification. The officers testified that they have not had specific training in verifying that they have the proper address. There is, however, a custom within the Richfield City Police Department that the first officer to arrive at a location is responsible for verifying the location.

Defendants admit that while they had probable cause and exigent circumstances allowing them to enter the Davis residence at 238 East, they did not have probable cause or exigent circumstances to enter the Dettle residence at 258 East.

The Dettles sued Defendants, alleging a violation of their civil rights under 42 U.S.C. § 1983 and ten state law causes of action, including: intentional trespass/unlawful entry; false arrest/imprisonment; negligence; assault; intentional infliction of emotional distress; negligent infliction of emotional distress; conversion/trespass to chattels; takings under the Utah Constitution; negligent supervision; and violation of civil rights.

## DISCUSSION

### Cross Motions for Summary Judgment

Plaintiffs seek Partial Summary Judgment to establish liability against Defendants as a matter of law. In response, Defendants brought a Motion for Summary Judgment, arguing that Plaintiffs' claims should be dismissed under the doctrine of qualified immunity and the Utah Governmental Immunity Act. Because the two motions are interrelated, the court will address both motions together.

**I. Section 1983 Claim**

To establish a claim under 42 U.S.C. § 1983, the Dettles must establish "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom, or usage, of any State." *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002).

**A. Entity Defendants**

Defendants Richfield City and Richfield City Police Department move for summary

judgment on Plaintiffs' civil rights claim under Section 1983. The Dettles respond that they have not raised a Section 1983 claim against these Defendants and the court should dismiss the motion as premature. In connection with the Dettles' Motion for Partial Summary Judgment, the Dettles also state that they have not raised claims against the entity Defendants "at this time." Defendants, however, point out that the Dettles' Complaint did not limit the Section 1983 Claim to the individual Defendants and sought damages against all Defendants. Therefore, the entity Defendants assert that it would not be premature for the court to rule on their motion.

Municipal entities cannot be held liable under Section 1983 based on the doctrine of respondeat superior. *See Cannon v. City and County of Denver*, 998 F.2d 867, 877 (10th Cir. 1993). To establish liability of a municipal entity under Section 1983, "a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 993-94 (10th Cir. 1996). Moreover, the custom or policy must operate as the "moving force" behind the violation. *Bd of County Comm'rs v. Brown*, 520 U.S. 397, 399 (1997).

Because the Dettles state only that they do not claim the entity Defendants are liable under Section 1983 at this time, they do not dispute that the law and facts support Defendants' motion for summary judgment on the Section 1983 claims. The Complaint does not allege a custom, policy, or procedure caused the violation. Although the Dettles assert that the Richfield City Police Department failed to train its officers with respect to verifying addresses, they repeatedly state that they do not have a claim against the City. The court cannot assert a "failure to train" claim for them. Plaintiffs were required to oppose summary judgment on whatever grounds they had against the entity Defendants, and they chose not to do so. Moreover, the "failure to train" can be a basis for municipal liability under Section 1983 in only limited

circumstances that do not appear to apply in this case. *See Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 773 (10th Cir. 2013). The Dettles have not attempted to advance such an argument. Accordingly, the court grants the entity Defendants' motion for summary judgment on the Dettles' Section 1983 claim.

### B. Individual Defendants

The Dettles argue that each of the elements for a Section 1983 claim are fully satisfied and this court should hold Defendants liable under Section 1983 as a matter of law. However, the Defendants argue that the officers' mistake does not constitute a constitutional violation and they are entitled to qualified immunity. "Qualified immunity is an affirmative defense against section 1983 damage claims available to public officials sued in their individual capacities." *Barney v. Pulsipher*, 143 F.3d 1299, 1309 (10th Cir. 1998).

"The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages in claims brought under 42 U.S.C. § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Edison v. Owens*, 515 F.3d 1139, 1145 (10th Cir. 2008). "When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to satisfy a strict two-part test: first, the plaintiff must show that the defendant's actions violated a constitutional or statutory right; second, the plaintiff must show that this right was clearly established at the time of the conduct at issue." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008).

To overcome qualified immunity, a plaintiff must not only show that an officer's actions were "objectively unreasonable" but must also show that the officer's mistaken belief as to the legality of his actions was itself unreasonable." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Law enforcement officers who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).

The Fourth Amendment provides that "[t]he right of the people to be secure in their person, houses . . . and effects, against unreasonable searches and seizures, shall not be violated." "At the very core" of the Fourth Amendment is the right of a person to be free from unreasonable government intrusion in his or her own home. *Kyllo v. United States*, 533 U.S. 27, 31 (2001). "It is a basic principle of Fourth Amendment law that searches and seizures inside the home without a warrant are presumptively unreasonable unless the police can show both probable cause and the presence of exigent circumstances." *Marshall v. Columbia Lea Regional Hospital*, 345 F.3d 1157, 1172 (10th Cir. 2003).

It is undisputed that Defendants did not have a warrant, probable cause, or exigent circumstances to enter the Dettles home. Defendants had consent and exigent circumstances to enter the Davis' residence, but mistakenly entered the wrong home. In a similar case involving a mistaken address, another court in this Circuit held that "[t]he Fourth Amendment is not necessarily violated, however, in circumstances such as exist here where officers have mistakenly executed a search warrant on the wrong property." *Powell v. Nunley*, 682 F. Supp. 2d 1260, 1266 (W.D. Okla. 2010).

The *Powell* case relied on *Maryland v. Garrison*, in which the Supreme Court held that the "Fourth Amendment is not violated by . . . the mistaken execution of a valid search warrant on the wrong premises." 480 U.S. 79, (1987). In *Garrison*, the officers executed a warrant on the wrong apartment because they thought there was only one apartment on the third floor when,

7

in fact, there were two. *Id.* at 80. The Court explained that "while the purposes justifying a police search strictly limit the permissible extent of the search, the Court has also recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Id.* at 87. The Court concluded that the question was ultimately whether the officers' actions in entering the second apartment were "objectively understandable and reasonable" under the circumstances. *Id.* at 87-88.

In the *Powell* case, the court also dealt with police going to the wrong address to execute a search warrant. 682 F. Supp. 2d at 1266-67. The court stated that "in determining whether the officers' entry into the [wrong] residence violated their Fourth Amendment rights, the question becomes whether the officers' action, though mistaken, were nonetheless objectively reasonable so as to make the entry the sort of 'honest mistake' to which *Garrison* alluded." *Id.* at 1267. The court concluded that qualified immunity was appropriate because it was an honest mistake. *Id.* 1267-68. The court reasoned that there was "no evidence to suggest the officers knew the house they were entering was the wrong one or that they would have had any reason or incentive to take such a step had they known it was the wrong house." *Id.* In addition, the court found that "the officers made a reasonable, albeit unsuccessful, effort to identify the house to be searched." *Id.* The court rejected opinions from the plaintiff's expert who identified various steps the officers could have taken that would have revealed the mistake. *Id.* at 1268. The court stated, "[n]o doubt those are among the ways the mistake that occurred here might have been discovered and averted, but such 20-20 hindsight is not the test under *Garrison*." *Id.*

In another case, police officers entered the wrong home because an officer told his fellow officers that he would park in front of the house to be searched but he parked in front of the

8

house next door based on the location of a car he had seen at the right house during previous surveillance. *Rogers v. Hooper*, 271 Fed. Appx. 431 (5th Cir. 2008). When the officer got out of his car and looked at the house, he realized he had not parked in front of the right house. *Id.* at 432. He called out to the entry team to stop, but they had already entered the wrong home. *Id.* The entry team broke through the front door, awakened the homeowners, and handcuffed them before being told they were at the wrong residence. *Id.* The officers removed the handcuffs, apologized, and left. *Id.* The homeowners brought a Section 1983 claim against the officers for violation of the Fourth Amendment. *Id.*

In *Rogers,* the Fifth Circuit upheld the lower court's granting of qualified immunity because the evidence did not demonstrate that the officers' actions were objectively unreasonable. *Id.* at 433. The court stated that "[t]he limited question that we answer in this appeal is whether Defendants . . . were objectively unreasonable in the manner that they led the team. No one has alleged that the Defendants intentionally entered the wrong home. Neither do we find, despite the significance of the error to the Plaintiffs and the ease that hindsight provides in determining how this mistake could have been avoided, that the Defendants were incompetent." *Id.* at 435.

The *Rogers* court noted that it was "sympathetic to the Plaintiffs, as what happened here must have been an intensely frightening event for those who believed they were in the safety of their own home. The intrusion caused by an unannounced, no-knock entry into a home in the middle of the night is substantial, no matter how quickly the mistake is noted and leave is taken. However, the doctrine of qualified immunity balances the 'vindication of citizens' constitutional rights and . . . public officials' effective performance of their duties.'" *Id.*

In *Harman v. Pollock*, 446 F.3d 1069, 1082 (10th Cir. 2006), the Tenth Circuit granted

qualified immunity to officers who mistakenly entered a separate residence because it appeared to be the detached garage of the house they had a warrant to search. Weighing all of the evidence for and against the reasonableness of the entry, the court concluded that the officer's conduct met the *Garrison* standard in that it was "'consistent with a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment.'" *Id.* The court reiterated, however, that *"Garrison* requires that the officers were obligated to retreat as soon as they knew or reasonably should have known that there was a mistake, i.e., they were in the wrong residence." *Id.*

In this case, Defendants contend that their entry into the wrong home meets the *Garrison* standard because it was an honest mistake and the mistake was objectively reasonable under the circumstances. The Dettles argue, however, that the court should not determine whether the entry was factually reasonable, only legally reasonable. The Dettles rely on established law stating that "warrantless entries into a home are per se unreasonable unless they satisfy the established exceptions." *Pearson v. Callahan*, 555 U.S. 223, 230 (2009). While this is the law in certain contexts, the qualified immunity cases discussed above illustrate that courts weigh the facts and circumstances of the situation to determine whether the Defendants acted objectively unreasonable. The Supreme Court has also explained that "[t]he protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Although most of the cases discussing this issue deal with the mistaken execution of a search warrant, the court finds no basis for distinguishing the cases based on that distinction alone. In the case of a no-knock search warrant, the officers are called to respond to the specific

10

address and enter just as the officers in this case did. In a search warrant case, the officers have the warrant to read and refer to in case of a question. In this case, the officers were called by dispatch and responded based on information they received over the radio. Therefore, the officers in this case had only an address, not a description of the house. That distinction, however, would actually make it more likely to make a mistake in the dispatch situation than the warrant situation. Moreover, there is a greater urgency in this case than in most search warrant cases. In this situation, the officers were trying to respond as quickly as possible to an emergency situation. They had no desire but to get the right house and respond to the call.

The court must also be mindful of the fact that Defendants were responding to a serious domestic violence situation that posed high risks. The wife was armed and the husband authorized the officers to break into the home. While the court agrees with the Dettles that such a situation should demand even closer review, it is also true that this is undoubtedly one of the most stressful situations in which an officer can be placed and a mistake can happen under such stress. When they entered the home, the officers honestly believed that they had consent and probable cause to enter it.

Defendants admit that Officer LeFevre made a mistake in identifying the correct house and the other officers who arrived after him relied on him to verify the right house. The Dettles point out that two of the officers in the team had been called to the Davis' house within the past year. However, there is no evidence that the officers recalled the previous incident. In addition, neither of those officers were the first officer on the scene. When they arrived, they relied on Officer LeFevre. The court does not find this reliance to be objectively unreasonable.

Officer LeFevre does not know how he made the mistake with the addresses. He does not know if he read the number on the house wrong, heard the house number wrong, or mixed up the

11

numbers. The Dettles' address numbers are on the porch and mailbox of the house. But, the call was also at night and during a snow storm. The address numbers are very similar–238 and 258 are even similar in appearance. The houses are also next door to each other and have similar floor plans. The similar floor plans enabled the officers to break into the garage and enter the home from the garage in the way that Mr. Davis had asked without being alerted to the fact that they might be in the wrong house.

The Dettles claim that Officer Lefevre's failure to recall how he made the mistake demonstrates that he did nothing to verify the correct address. However, that cannot be the case. If he had done nothing to verify the address, he would not have been at the house next door with a similar number. It is a part of the human condition to occasionally make a mistake without knowing how one did it. Everyone has had to tell someone on the telephone that they dialed the wrong number and had the person respond that they had no idea how they called that number. This happens in times of little stress. *Garrison* reminds us that even trained, professional officers can occasionally make an honest mistake in performing their work.

It is undisputed that is was unfortunate that the mistake occurred. As in *Rogers*, the court is sympathetic to the Dettles for what must have been an intensely frightening event in the safety of their own home. However, the qualified immunity doctrine balances the constitutional violation and an officer's ability to effectively perform his or her work. The *Garrison* court held that there was no constitutional violation in the case of an honest mistake. In addition, "qualified immunity leaves 'ample room for mistaken judgments," and protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Harman*, 446 F.3d at 1077.

It is undisputed that none of the officers knowingly violated the law. Moreover, this is not a situation where the officers tried to take advantage of their mistake or delayed in admitting

the mistake. They immediately holstered their weapons, most left the residence within less than two minutes, and one stayed an extra two minutes to explain the situation and apologize. The officers were quick to leave and get to the real emergency. Given the court's analysis of the factual situation, it cannot conclude that the officers were plainly incompetent. Accordingly, the court concludes that the officers are entitled to qualified immunity on the Dettles' Section 1983 claims.

## II. State Law Claims

Both the Dettles and Defendants also seek summary judgment on the Dettles' state law claims for intentional trespass/unlawful entry, negligence, negligent supervision, and conversion/trespass to chattels. Defendants argue that the Dettles' state law claims are barred by the Utah Governmental Immunity Act. The Dettles, however, assert that the court should rule that (1) the Utah Governmental Immunity Act is unconstitutional on its face or, at the very least, as applied to the facts of this case and (2) the United States Constitution and federal statutes, such as 42 U.S.C. § 1983, preempt the Utah Governmental Immunity Act.

First, the Dettles contend that the Utah Governmental Immunity Act unconstitutionally protects the government and government employees from liability for wrongful acts because the only way a plaintiff can defeat the Act's sweeping protection is if the plaintiff's claims fall directly within one of the few exceptions where immunity is specifically waived. The Dettles claim, however, that these waivers are insufficient to uphold the constitutionality of the Act. Because the Act allows governmental entities and employees to violate the United States Constitution and Section 1983, the Dettles urge this court to find the Act unconstitutional. If the court is disinclined to strike down Utah's Governmental Immunity Act as unconstitutional on its face, the Dettles seek a ruling that the Act is unconstitutional as applied to the present case.

13

The Dettles also ask the court to rule that the United States Constitution and Section 1983 preempt Utah's Governmental Immunity Act. The Dettles contend that there is no set of circumstances under which the Act can be applied in which it does not directly controvert the United States Constitution and the Act expressly prohibits suits based on violations of civil rights.

The Dettles' arguments about the unconstitutionality and preemption of the Utah Governmental Immunity Act are contrary to the well-established principles of federalism and state sovereignty. Nothing in Utah's Governmental Immunity Act precludes the Dettles from suing Defendants under Section 1983 for violations of their *federal* constitutional rights. The Act only limits the Dettles' ability to sue Defendants under *state* law causes of action.

Under the Eleventh Amendment, individual states and their political subdivisions are sovereigns who are immune from suits from their own citizens unless they consent to be sued. *Harris v. Oklahoma Office of Juvenile Affairs*, 519 Fed. Appx. 978, 979 (10th Cir. 2013). This "general concept of state tort immunity is not vulnerable to a constitutional challenge" and is not "violative of either the Due Process Clause or Equal Protection Clause of the Fourteenth Amendment." *Santana v. City of Tulsa*, 359 F.3d 1241, 1246 (10th Cir. 2004).

The Dettles have no right to sue Utah or its political subdivisions under Utah law unless Utah has consented to such suit through its constitution or its legislature. There is no case law supporting the Dettles' position that the Utah Governmental Immunity Act is unconstitutional or preempted by federal law. The Utah Legislature has enacted the Utah Governmental Immunity Act and it sets the parameters for state tort claims.

Therefore, the court must address whether the entity and individual defendants are immune from the Dettles' state tort claims under the Utah Governmental Immunity Act. The

determination of whether immunity has been waived under the Utah Governmental Immunity Act includes three elements: (1) whether the activity is a governmental function for which blanket immunity has been granted in Utah Code Annotated Section 63G-7-201; (2) whether blanket immunity is waived in another section of the Act; and (3) if immunity has been waived, whether there is an exception to the waiver that preserves immunity. *See Ledfors v. Emery School Dist.*, 849 P.2d 1162, 1164 (Utah 1993).

Under the first prong, a governmental entity is immune from suit if the suit arises from the performance of a governmental function and immunity has not been expressly waived for a particular cause of action referenced in the Act. "Governmental function" is defined broadly as "each activity, undertaking, or operation of a governmental entity" or of "a department, agency, employee, agent, or officer of a governmental entity." Utah Code Ann. § 63G-7-102(4)(a), (c). Utah case law has interpreted this language to include a police search resulting in alleged injury to property. *See DeBry v. Noble*, 889 P.2d 428, 439 (Utah 1995).

In considering the second prong, there are no provisions in the Act waiving immunity for intentional tort causes of action, including trespass and conversion/trespass of chattel claims. Consequently, Defendants are immune from Plaintiffs' suit on these causes of action. The Act does expressly waive governmental immunity "as to any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment." Utah Code Ann. § 63G-7-301(4)(a). Such claims include the Dettles' claims for negligence and negligent supervision.

Under the third prong, however, there is an exception to the "negligent act or omission" waiver where the plaintiff's alleged "injury arises out of, in connection with, or results from: assault, battery, false imprisonment, false arrest, malicious prosecution, intentional trespass,

15

abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, or violation of civil rights." Utah Code Ann. § 63G-7-301(5)(b). In their Amended Complaint, the Dettles claim five of these causes of action arise from the events that occurred on December 18, 2012: assault, intentional trespass/unlawful entry, false arrest/imprisonment, intentional infliction of emotion distress, and violation of civil rights. The Dettles' negligence claims "arise out of, in connection with, or result from" the same facts and circumstances giving rise to their intentional torts. All the claims arise out of the events on December 18, 2012. Therefore, the entity Defendants are immune from the Dettles' state law tort claims.

The individual Defendants are immunized under the Utah Governmental Immunity Act from the Dettles' state law tort claims except where the employee is alleged to have "acted or failed to act through fraud or willful misconduct." Utah Code Ann. § 63G-7-2(3)(c)(I). The Act defines willful misconduct as intentional. "Willful misconduct cannot be predicated upon mere inadvertence or even gross negligence." *Milligan v. Harward*, 355 P.2d 62, 63 (Utah 1960).

Plaintiffs negligence claims facially fail to satisfy the willful misconduct requirement because they involve an alleged failure to act reasonably. *See id.* Likewise, the Dettles' remaining claims are all based on a mistake resulting from a lack of care in confirming the correct address. The Dettles have not alleged, nor is there any evidence, to suggest that the individual officers acted with willful misconduct. Because of the absence of willful misconduct, the individual officers are immune from the Dettles' state tort claims under Utah's Governmental Immunity Act.

### III. State Constitutional Claims

In Defendants' Motion for Summary Judgment, Defendants also assert that the Dettles may not recover for alleged violations of the Utah State Constitution because Utah courts require

that any such violation be "flagrant."  *See State v. Newland*, 253 P.3d 71, 78 (Utah Ct. App. 2010) (defining "flagrant" as "beyond unreasonable" and conduct that "was obviously improper . . . or that [an officer] knew was likely unconstitutional"); *State v. Strieff*, 286 P.3d 317, 329-31 (Utah Ct. App. 2012) (defining flagrant as impropriety of misconduct was obvious or the officer "knew, at the time, that his conduct was likely unconstitutional but engaged in it nevertheless.").

In their opposition, Plaintiffs assert that the officers' conduct was unquestionably flagrant because of their failure to enter the right house.  But Utah courts have held that an "unreasonable mistake alone is insufficient to establish flagrant misconduct."  *Newland*, 253 P.3d at 78.  Mere negligence does not equal flagrant conduct.

Defendants further argue that there is no merit to the Dettles' claim for property damage and taking under the Utah Constitution.  To state a valid property claim, the substantial interference with property must be a "permanent, continuous, or inevitable recurring interference with property rights."  *Colman v. Utah State Land Bd.*, 795 P.2d 622, 627 (Utah 1990).  This one-time mistake was not permanent, continuous, or recurring.  The doors have been repaired and the carpet cleaned.  Also, a taking must grow out of a public use rather than merely being the result of a negligent or wrongful government act.  *New World Life Ins. Co. v. Bountiful City*, 803 P.2d 1241, 1246 (Utah 1990).  The damage alleged in this case was not property taken for public use.  Rather, it was the result of mistaken conduct.  Therefore, Defendants are entitled to summary judgment on the Dettles' state constitutional law claims.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Partial Summary Judgment is DENIED, and Defendants' Motion for Summary Judgment is GRANTED.   Because this ruling disposes of all of the claims at issue in the case, the Clerk of Court is directed to close the case

and enter judgment in favor of Defendants. Each party shall bear its, his, or her own costs.

DATED this 2d day of September, 2014.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge